Merrimack
No. 2010-656

CLAIRE CROWLEY & a.

v.

TOWN OF LOUDON

THE LEDGES GOLF LINKS, INC.

v.

CLAIRE CROWLEY

Argued: September 21, 2011
Opinion Issued: December 8, 2011

*Gallagher, Callahan & Gartrell, P.C.*, of Concord (*Michael R. Callahan* and *Samantha D. Elliott* on the brief, and *Mr. Callahan* orally), for petitioners Residents of Green View Drive.

*Hebert & Dolder, PLLC*, of Concord, for Claire Crowley, filed no brief.

*Upton & Hatfield, LLP*, of Concord (*Barton L. Mayer* on the joint brief and orally), for respondent Town of Loudon.

*Steiner Law, PLLC*, of Concord (*R. James Steiner* on the joint brief and orally), for The Ledges Golf Links, Inc.

HICKS, J. The petitioners, Residents of Green View Drive (the Residents), appeal an order of the Superior Court (*Smukler*, J.) that: (1) found no "occasion" to lay out Green View Drive as a class V public highway; (2) partially granted and partially denied the petition to quiet title filed by The Ledges Golf Links, Inc. (The Ledges) against Claire Crowley; and (3) ruled that Ms. Crowley was responsible for the continued maintenance of Green View Drive and could recover road maintenance costs from the Residents. We affirm in part, vacate in part, and remand.

The record supports the following facts. Green View Drive is located in Loudon and provides access to a portion of the golf course operated by The

Ledges and to the homes owned by the Residents. Respondent Town of Loudon (Town) has classified Green View Drive as a private roadway.

In 1997, before Green View Drive was built, the golf course property, then owned by Ms. Crowley and her husband, William Crowley, was sold to the Loudon Country Club, Inc. Also in 1997, Mr. Crowley petitioned the Town's planning board to approve a residential subdivision on his land, which surrounded the golf course. His plan was for a small subdivision to be served by a private road. Mr. Crowley received planning board approval for his subdivision plan in January 2000; the approved plan included an "access road to be privately maintained." The access road later became Green View Drive.

In December 1999, the country club sold the golf course property to The Ledges. At some point, while constructing Green View Drive, Mr. Crowley mistakenly located a portion of the road on golf course property. As a result, he entered into a May 2000 settlement agreement with The Ledges and others to resolve this issue. The settlement agreement provided, among other things, that Mr. Crowley would "grant to the Ledges an easement for the Ledges to have use of [Green View Drive] for all golf course purposes." The agreement also provided that each party to the agreement "shall have full use of [Green View Drive]" to access that party's real property and that each party would "share equally in the cost of maintaining and repairing [Green View Drive]."

In August 2000, the Crowleys and The Ledges entered into an easement agreement "in consideration of" the May 2000 settlement agreement. Under the easement agreement, the Crowleys granted to the Ledges "[a] permanent easement . . . to repair, maintain, and/or replace" on the Crowleys' property, including Green View Drive, "any portion of the Golf Course Infrastructure," which was defined as "any water, electrical or similar system or portion thereof . . . presently located" on the Crowleys' land.

The Crowleys and The Ledges entered into another easement agreement in September 2001, in which the Crowleys granted to The Ledges "[a] permanent easement to use for all golf course purposes" a particular portion of the Crowleys' property. Like the August 2000 easement, the September 2001 easement included a grant of a permanent easement to The Ledges "to repair, maintain, and/or replace any portion of the Golf Course Infrastructure," which the September 2001 easement defined as "any water, electrical or similar system or portion thereof" currently on the Crowleys' land.

After Mr. Crowley died, Ms. Crowley petitioned the Town's board of selectmen to accept Green View Drive as a town road. Her petition was denied in March 2007. Ms. Crowley again petitioned the Town to accept

Green View Drive as a public road in November 2008; the Residents joined in this request. The Town denied the petition. Ms. Crowley and the Residents then petitioned the superior court to lay out Green View Drive as a public road. *See* RSA 231:38, I (2009). While this action was pending, The Ledges successfully moved to intervene. The Ledges also brought a quiet title action against Ms. Crowley. The trial court consolidated the petitioners' petition about Green View Drive with The Ledges' petition to quiet title, and ultimately decided that there was no "occasion" for laying out Green View Drive as a town road and granted The Ledges' petition in part. The trial court also decided that Ms. Crowley is responsible for the continued maintenance of Green View Drive. In response to Ms. Crowley's motion, the trial court further ruled that she "continues to be entitled to recover road maintenance costs from Green View Drive residents as she has in the past." This appeal, in which Ms. Crowley has not participated, followed.

*I. Quiet Title Petition*

■ We first address the Residents' challenge to the trial court's decision in The Ledges' quiet title action. In an action to quiet title, the burden is on each party to prove good title as against all other parties whose rights may be affected by the court's decree. *Austin v. Silver*, 162 N.H. 352, 353 (2011). We will uphold the trial court's determination unless it is erroneous as a matter of law or unsupported by the evidence. *Id.*

■ The Residents argue that the trial court erred when it decided that The Ledges "has a permanent easement to use . . . Green View Drive . . . for [golf] cart paths." Resolving this issue requires that we interpret the pertinent easement agreements. We review the trial court's interpretation *de novo*. *See Close v. Fisette*, 146 N.H. 480, 484 (2001). When interpreting an agreement, we give the language used by the parties its reasonable meaning, considering the circumstances and the context in which the agreement was negotiated, and reading the document as a whole. *Birch Broad. v. Capitol Broad. Corp.*, 161 N.H. 192, 196 (2010). We give an agreement the meaning intended by the parties when they wrote it. *Id.*

"The language of a contract is ambiguous if the parties to the contract could reasonably disagree as to the meaning of that language." *Id.* (quotation omitted). If the agreement's language is ambiguous, it must be determined, under an objective standard, what the parties, as reasonable people, mutually understood the ambiguous language to mean. *Id.* Applying an objective standard to determine what the parties, as reasonable people, mutually understood the ambiguous language to mean necessarily involves

factual findings by the trial court to which we will defer if they are supported by the evidence and are not legally erroneous. *Id.* at 197.

Both the August 2000 and September 2001 easement agreements gave The Ledges a "permanent easement" to maintain and repair "any water, electrical or similar system or portion thereof" on the Crowleys' property, which included Green View Drive. As the trial court aptly observed, the plain language of both agreements does not demonstrate that The Ledges had an express easement to use Green View Drive "for all golf course purposes," despite the May 2000 settlement agreement requiring such an easement to be granted. In the trial court's words: "Although the settlement agreement states that Mr. Crowley would grant such an easement, the subsequent documents do not follow through."

Nevertheless, the trial court construed the August 2000 and September 2001 agreements as granting The Ledges an easement to use Green View Drive for the purpose of golf cart travel. The trial court reached this conclusion by relying, in part, upon a dictionary definition of "infrastructure." Based upon this definition, the court ruled that golf cart paths were included under the terms of the August 2000 and September 2001 easement agreements because the golf cart paths were part of the golf course's infrastructure. The court further concluded that because the golf cart paths are now within the right-of-way of Green View Drive, and have been in this approximate location since the easement was created, "the Ledges has a permanent easement to use the Green View Drive right-of-way for the cart paths." *See White v. Hotel Co.*, 68 N.H. 38, 43 (1894) (under express grant, grantees take "by implication whatever rights [are] reasonably necessary to enable them to enjoy [the easement] beneficially").

■ We agree with the Residents that the trial court erred by relying upon the dictionary definition of the term "infrastructure." Common usage does not control when, as here, the contracting parties have defined a term. *See Cole v. Combined Ins. Co. of America*, 125 N.H. 395, 396 (1984). Here, the parties defined the term "infrastructure" to mean "any water, electrical or similar system or portion thereof"; thus, common usage does not control the meaning of this term.

■ The pertinent term in our view is not "infrastructure," which the parties defined, but the phrase "similar system." This phrase, as used in the August 2000 and September 2001 easement agreements, is ambiguous. To interpret it, we must "consider the parties' intent by examining the contract as a whole, the circumstances surrounding execution and the object intended by the agreement, keeping in mind our goal of giving effect to the intention of the parties." *N.A.P.P. Realty Trust v. CC Enterprises*, 147 N.H. 137, 141 (2001). However, because the trial court did not make

factual findings on this issue, we cannot determine what the parties intended the phrase to mean. We, therefore, vacate this portion of the trial court's order and remand for it to determine, in the first instance, what the parties, as reasonable people, mutually understood the phrase "similar system" to mean. *See id.* at 140-41.

*II. Petition to Classify Green View Drive as Class V Public Highway*

We next address the Residents' assertion that the trial court erred when it decided that there was no "occasion" to lay out Green View Drive as a public road. Upon petition, a town will lay out roads when there is an "occasion" to do so. *Wolfeboro Neck Prop. Owners Assoc. v. Town of Wolfeboro*, 146 N.H. 449, 451 (2001). "Occasion" for the lay out of public roads exists if the public interest requires the town's acceptance of the roads. *Id.* "Assessing occasion involves an equitable balancing of competing interests." *Green Crow Corp. v. Town of New Ipswich*, 157 N.H. 344, 350 (2008). Specifically, a town's board of selectmen "must balance the public need for the roads against the burden the roads would impose upon the town." *Id.* (quotation and brackets omitted).

If a town refuses to lay out a road, the trial court may be petitioned to do so. *Wolfeboro Neck Prop. Owners Assoc.*, 146 N.H. at 452; *see* RSA 231:38, I. "The superior court conducts a *de novo* hearing to make an independent determination of the occasion, or appropriateness, of laying out a road as requested." *Wolfeboro Neck Prop. Owners Assoc.*, 146 N.H. at 452 (quotation omitted). We will uphold the superior court's determination as to whether an "occasion" for laying out the road exists "if it is supported by some evidence," and is not legally erroneous. *Id.*

We have outlined a two-step process for a trial court to undertake when assessing whether "occasion" for laying out a road exists. *Green Crow Corp.*, 157 N.H. at 350. First, the court must "balance the public interest in the layout against the rights of the affected landowner." *Id.* (quotation omitted). If the rights of the affected landowner outweigh the public interest, there is no occasion for laying out the road. *Id.* If, on the other hand, "the public interest justifies . . . taking . . . the land without the landowner's consent," then the court must engage in a second step, which is to balance the public interest in the layout against the burden imposed upon the town. *Id.* (quotation omitted). "If the balancing required by the second step favors the public interest, occasion for the layout exists." *Id.* (quotation omitted).

In assessing the "public interest," the trial court may consider, among other factors: (1) integration within an existing road system; (2) ease of existing traffic flow; (3) improvement to convenience of travel; (4) facilita-

tion of transportation for school children; (5) improved accessibility to business district and employment centers; (6) improved accessibility for fire, emergency and police services; (7) whether it would benefit a significant portion or just a small fraction of the town tax base or year-round residents; and (8) anticipated frequency of road use. *Id.*

In assessing the "town burden," trial courts may consider anticipated construction and ongoing maintenance costs pertaining to the road itself, as well as the impact on the town's infrastructure due to municipal growth, such as increased costs for school, fire, police and emergency systems. *See id.* at 350-51.

In this case, the trial court found that there was no occasion for laying out Green View Drive as a public road in part because the rights affecting the owner of a portion of Green View Drive — The Ledges — outweigh the public interest in the layout. Alternatively, the trial court ruled that even if the public interest justified taking the land without The Ledges' consent, the minimal public interest in laying out Green View Drive as a public road was outweighed by the burden imposed on the town from doing so.

The court found that the public's interest in laying out Green View Drive as a public road was minimal because there are few houses on the road, it is not frequently used, and improving it would not improve convenience of travel or ease existing traffic flow since it is a dead-end road. The court found that although school children live on Green View Drive, a nearby bus stop meets their needs, and that because the Town previously declared Green View Drive as an "emergency lane," residents on the road had adequate access to emergency services. *See* RSA 231:59-a (2009). Against this minimal public benefit, the court weighed the burden on the Town from laying out Green View Drive as a public road, which, the court found, included added expense from repairing or reconstructing the road because the golf course's water and electrical lines run underneath it.

To challenge the trial court's determination that no occasion exists for laying out Green View Drive as a public road, the Residents first argue that because the Town allegedly did not comply with RSA 674:41, I(d) (2008), they purchased their homes without notice that the Town had limited responsibility and liability for Green View Drive, and their lack of notice somehow creates a "great public need" for Green View Drive to be public.

■■ This argument fails for several reasons. First, the Residents have not demonstrated that their need for notice equates to a public need for the road. Second, although the Residents claim lack of notice, the trial court expressly found that they had notice that Green View Drive was a private road, which necessarily entails notice that the Town had limited responsibility and liability for it. As the trial court observed:

> From the beginning of Mr. Crowley's plans to subdivide, he represented to the [planning] board that what would become Green View Drive would be a private road. . . . Mr. Crowley also represented this intent through the plans recorded with the Merrimack County Registry of Deeds. . . . Finally, many of the deeds to property along Green View Drive refer to the road as a private subdivision road. . . . Indeed, some of the residents admit to knowing that the road was private when they bought it.

Third, the Residents' argument mistakenly assumes that RSA 674:41, I(d) governed permits to build on Green View Drive. Because Green View Drive was a street on a subdivision plat, which the planning board approved, we agree with the Town that RSA 674:41, I(b)(2) (2008) governed the building permits at issue.

The Residents next contend that the trial court erred when it considered Green View Drive's status as an emergency lane. We disagree that this was legal error. *See Green Crow Corp.*, 157 N.H. at 350.

Relying upon *Wolfeboro Neck Property Owners Association*, 146 N.H. at 453, the Residents next assert that "[t]he burdens cited by the lower court were created by the Town's unreasonable actions," and, thus, should not have been weighed in the "occasion" analysis. *Wolfeboro Neck Property Owners Association* is distinguishable from the instant case. In *Wolfeboro Neck Property Owners Association*, we held that, to the extent that the trial court relied upon any burden that was the result of the town's negligent inspection of the subdivision roads at issue, it erred. *Wolfeboro Neck Prop. Owners Assoc.*, 146 N.H. at 453. In that case, the plaintiffs alleged that even though the roads at issue did not meet town standards, the town approved them. *Id.* at 450-51. Thereafter, the plaintiffs, thinking that the roads met town standards, petitioned the town to accept the roads as public roads. *Id.* at 450. Upon inspection, the town discovered that the roads, in fact, did not meet town standards and that fixing the deficiencies would cost approximately $295,000. *Id.* at 450-51.

When assessing the "burden" upon the town from laying out the roads as public, the trial court did not resolve whether the town had been negligent in approving them and, thus, whether the burden from fixing their deficiencies was a burden of the town's own making. *Id.* at 451. We reversed the trial court's decision, holding that "when undertaking the equitable balancing required to determine whether there is an 'occasion' under RSA 231:8 for the laying out of public roads, the trial court . . . should not . . . consider[] any 'burden' the town may have had in laying out the roads caused by its own unreasonable actions." *Id.* at 453. We instructed the court, on remand, to decide whether the town negligently inspected the

roads and, if so, not to weigh in the "occasion" analysis any burden on the town from its unreasonable action in negligently inspecting the roads. *Id.*

In this case, by contrast, there is no claim that the Town was negligent when it approved Mr. Crowley's subdivision plan, which included his plan to develop Green View Drive as a private road. We find no legal error in the trial court's equitable balancing of the benefit to the public from laying out Green View Drive against the burden imposed upon the Town in doing so.

We have reviewed the Residents' remaining arguments and hold that they lack merit and warrant no extended consideration. *See Vogel v. Vogel*, 137 N.H. 321, 322 (1993).

*III. Maintenance Obligations for Green View Drive*

Lastly, we address the Residents' contention that the trial court erred when it decided that Ms. Crowley continues to be responsible for maintaining Green View Drive and that she is entitled "to recover road maintenance costs from Green View Drive residents as she has in the past." They contend that this issue was not properly before the trial court. In their motion to the trial court, the Residents asserted that Ms. Crowley agreed that this issue should not have been decided. The Town and The Ledges have not responded to this argument in their joint appellate brief.

The record before us reveals that the issues before the court did not include deciding which of the private parties — Ms. Crowley, The Ledges or the Residents — were responsible for maintaining Green View Drive if it remained private. While there was ample evidence that Green View Drive was intended to be a private road, that the Crowleys had previously maintained it, and that Green View residents had reimbursed the Crowleys for maintenance costs, the record does not show that the parties litigated whether any of these obligations were legally enforceable. Accordingly, we vacate the trial court's finding that Ms. Crowley was responsible for maintaining Green View Drive and that she could recover road maintenance costs from Green View Drive residents.

*Affirmed in part; vacated in part; and remanded.*

DALIANIS, C.J., and DUGGAN and LYNN, JJ., concurred.