# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

## In Case No. 2017-0261, <u>Summit Meadow Farm, Inc. v. Daniel D. and Karen R. Holmes, d/b/a Sunnyfield Farm</u>, the court on August 2, 2018, issued the following order:

Having considered the briefs and oral arguments of the parties, the court concludes that a formal written opinion is unnecessary in this case.  The plaintiff, Summit Meadow Farm, Inc., appeals an order of the Circuit Court (<u>Stephen</u>, J.) dismissing its possessory action against the defendants, Daniel D. and Karen R. Holmes d/b/a Sunnyfield Farm, following a bench trial.  We affirm.

The record supports the following facts.  Daniel D. and Karen Ruth Holmes (the Holmeses) are farmers.  In May 2014, they created "Dancing Ground Farms, LLC" (Dancing Ground), not a 501(c)(3) organization.  <u>See</u> 26 U.S.C. § 501(c)(3) (2012).  The Holmeses were also associated with a farming entity named "Sunnyfield Farm," which was a 501(c)(3) organization.

In August 2015, the plaintiff entered into a three-year lease, which identified the tenant as "Dan and Ruth Holmes d/b/a Sunnyfield Farm, a NH 501(c)3 organization," and was signed by Dan and Ruth Holmes, with the title "Farmer."  At some point after entering into the lease, the Holmeses ceased their association with Sunnyfield Farm.

The relevant portions of the lease, in part, state: (1) "Tenant shall not assign or sublet its interest in this Lease or the Land without the prior written approval of Landlord"; and (2) "At all times during the term, Tenant will carry and maintain . . . insurance."

In September 2016, the plaintiff sought to evict the tenant on the grounds that the tenant had violated the above provisions.  In relevant part, the eviction notice states that the reasons for eviction are: (1) "assigning/subletting [tenant's] interest in the leased premises to Dancing Ground Farms, LLC without proper authorization from [the plaintiff]"; and (2) "[f]ailure to maintain proper insurance for the leased premises, as the certificate of liability insurance that [the tenant] provided does not, for example, name Dan and Ruth Holmes d/b/a Sunnyfield Farm as the insured."

Following a bench trial, the trial court dismissed the plaintiff's possessory action.  In so ruling, the court rejected the plaintiff's argument "that an assignment of lease occurred when the [Holmeses] switched their affiliation

from Sunnyfield Farms to . . . Dancing Ground Farms, LLC." The court concluded that no assignment occurred because "there was a continuation of the original tenants," the Holmeses. With regard to the insurance issue, the trial court found that the property was continuously insured. The plaintiff filed a motion for reconsideration, which the trial court denied. This appeal followed.

In reviewing a trial court's decision rendered after a trial on the merits, we uphold the trial court's factual findings and rulings unless they lack evidentiary support or are legally erroneous. O'Malley v. Little, 170 N.H. 272, 275 (2017). We do not decide whether we would have ruled differently than the trial court, but rather, whether a reasonable person could have reached the same decision as the trial court based upon the same evidence. Id. Thus, we defer to the trial court's judgment on such issues as resolving conflicts in the testimony, measuring the credibility of the witnesses, and determining the weight to be given evidence. Id. Nevertheless, we review the trial court's application of the law to the facts de novo. Id.

On appeal, the plaintiff argues that the trial court erred by finding that the defendants did not breach the lease provisions pertaining to assignment/sublet and insurance.

Resolving the issue of whether a breach occurred requires interpreting the parties' lease agreement. See Birch Broad. v. Capitol Broad. Corp., 161 N.H. 192, 196 (2010). A lease is a form of contract that is construed in accordance with the standard rules of contract interpretation. N.A.P.P. Realty Trust v. CC Enterprises, 147 N.H. 137, 139 (2001). The interpretation of a lease, including whether a term is ambiguous, is ultimately a question of law for this court to decide. See Birch Broad., 161 N.H. at 196. Accordingly, we review a trial court's interpretation of a lease de novo. See id.

When interpreting a written agreement, we give the language used by the parties its reasonable meaning, considering the circumstances and the context in which the agreement was negotiated, and reading the document as a whole. Id. We give an agreement the meaning intended by the parties when they wrote it. Id. Absent ambiguity, the parties' intent will be determined from the plain meaning of the language used in the contract. Id.

The plaintiff first argues that the trial court erred when it found that the defendants did not assign their obligation under the lease. We disagree.

The plaintiff essentially contends that, when the Holmeses ceased using Sunnyfield Farm as their assumed business name, but instead used Dancing Ground as their assumed business name, their obligations under the lease were assigned from Sunnyfield Farm to Dancing Ground. This argument rests

2

upon the mistaken premise that Sunnyfield Farm and Dancing Ground were the lessees, when, in fact, the Holmeses were the lessees at all times.

The Holmeses entered into the lease in their individual capacities as farmers, as reflected by their individual signatures on the last page of the lease under "TENANT."  The use of "d/b/a" on the first page of the lease did not substitute Sunnyfield Farm, the 501(c)(3), as the lessee in place of the Holmeses.  Rather, "the designation 'd/b/a' is merely descriptive."  18 C.J.S. Corporations § 135, at 493 (2018).  The use of "d/b/a" on the first page of the lease indicates only that Sunnyfield Farm was the assumed business name of the Holmeses' business when they entered into the lease.

Just as their use of Sunnyfield Farm as an assumed business name did not make Sunnyfield Farm a party to the lease, so too their later use of Dancing Ground as an assumed business name did not make Dancing Ground a party to the lease.  Accordingly, no "assignment" or "sublease" occurred when the Holmeses ceased using Sunnyfield Farm as their assumed business name, but instead used Dancing Ground as their assumed business name.

Despite the plaintiff's argument to the contrary, the fact that the Holmeses warranted in section 10.9 of the lease that they had the authority to execute the lease "on behalf of" the tenant — argued to be Sunnyfield Farm — is of no consequence.  Rather, by that representation, the Holmeses merely reaffirmed that they had authority to sign for themselves when they signed the lease.

Furthermore, nothing in the lease required the Holmeses to operate solely as Sunnyfield Farm or to maintain 501(c)(3) status.  Here, the plaintiff got what it bargained for — the Holmeses as tenants under the lease operating a farm on the premises.

Because we conclude that the Holmeses entered into the lease in their individual capacities, and no assignment occurred, we need not address the parties' arguments pertaining to the trial court's finding of ambiguity in the lease as to the identity of the tenant.

Next, the plaintiff argues that the trial court erred by finding that the defendants did not breach the lease provision that required them to maintain certain insurance.  The record supports the trial court's finding that the premises were insured during the pendency of the lease.  Because we have already established that the Holmeses entered into the lease in their individual capacities and have continued to be the on-the-ground tenants, whether the insured was listed as Sunnyfield Farm or Dancing Ground is immaterial under these circumstances.  Moreover, insurance was always in place covering Summit Meadow as an additional insured, in compliance with the lease.  Thus, although the name of the operating entity changed, the property was

3

continuously insured.  The plaintiff's witnesses acknowledged as much during the trial.

The plaintiff also argues that the trial court erred by failing to find that the defendants breached the lease provision requiring them to timely submit the certificates of liability insurance.  However, the trial court was not required to reach this issue.  This technical error was not listed on the eviction notice, and pursuant to RSA 540:3, III (2007), "[t]he eviction notice shall state with specificity the reasons for the eviction."  RSA 540:3, III; see also So. Willow Properties v. Burlington Coat Factory of N.H., 159 N.H. 494, 498 (2009) (strict compliance with statutes governing possessory actions is required).  Because it was not in the eviction notice, this alleged breach cannot serve as a basis for eviction.

Affirmed.

LYNN, C.J., and HICKS and HANTZ MARCONI, JJ., concurred.

**Eileen Fox,
Clerk**