**THE STATE OF NEW HAMPSHIRE**

**SUPREME COURT**

**In Case No. 2019-0479, <u>Mohamed F. Hafez v. 100 Northeastern Boulevard, LLC & a.</u>, the court on April 27, 2020, issued the following order:**

Having considered the defendants' brief, the plaintiff's memorandum of law, and the record submitted on appeal, we conclude that oral argument is unnecessary in this case. <u>See</u> <u>Sup. Ct. R.</u> 18(1). We affirm.

The defendants, 100 Northeastern Boulevard, LLC (100 NEB) and Mile High Real Estate Management, LLC (MHREM), appeal an order of the Superior Court (<u>Colburn</u>, J.), following an evidentiary hearing, denying their motion for a new trial on grounds of perjury and newly-discovered evidence. On appeal, the defendants argue that the trial court erred by: (1) ruling that the allegedly dishonest testimony[1] of the plaintiff, Mohamed F. Hafez, in the underlying case did not concern a material issue; (2) determining that the defendants were at fault for failing to discover the newly-discovered evidence in the prior trial, and that the newly-discovered evidence would not have produced a different result; (3) neither compelling the plaintiff's deposition, nor requiring his testimony at the evidentiary hearing on the motion for a new trial; and (4) not ruling upon the defendants' requests for findings of fact and rulings of law.

"A new trial may be granted in any case when through accident, mistake or misfortune justice has not been done and a further hearing would be equitable." RSA 526:1 (2007). Newly-discovered evidence may justify the granting of a new trial under RSA 526:1. <u>State v. Etienne</u>, 163 N.H. 57, 96 (2011). To obtain a new trial based upon newly-discovered evidence, the moving party generally must establish that: (1) the moving party was not at fault for not discovering the evidence at the prior trial; (2) the evidence is admissible, material to the merits of the case, and not cumulative; and (3) the evidence is of such a character that a different result will probably be reached upon a new trial. <u>Id</u>.; <u>Rautenberg v. Munnis</u>, 109 N.H. 25, 26 (1968).

Pursuant to this test, newly-discovered evidence establishing that a witness in a prior trial testified falsely may justify the granting of a new trial.

---

[1] In their brief, the defendants characterize the trial court's order on their motion for a new trial as having "found" that the plaintiff "lied under oath." The trial court made no such finding. Instead, it <u>assumed, without deciding</u>, that the challenged testimony from the underlying trial was both false and dishonest, and determined that, even with those <u>assumptions</u>, the testimony did not concern a matter that was material to the case and, thus, did not entitle the defendants to a new trial on the basis of perjury.

Etienne, 163 N.H. at 96; Barton v. Plaisted, 109 N.H. 428, 432-33 (1969); see also Conant v. O'Meara, 167 N.H. 644, 652 (2015) (observing that under RSA 526:1, perjury by a witness may constitute grounds for a new trial). Moreover, if the falsely-testifying witness was a party, and if the false testimony both was dishonest and concerned a material issue, we have held that the verdict will be set aside regardless of whether a new trial will probably yield a different result. Barton, 109 N.H. at 432; Rasquin v. Cohen, 92 N.H. 440, 442 (1943). This exception to the requirement that the moving party establish the likelihood of a different result does not apply, however, to false testimony that does not concern a material issue, but "would serve only to discredit" the witness. Cormier v. Stevens, 107 N.H. 66, 68 (1966).

Whether to grant a new trial under RSA 526:1 is a matter left to the sound discretion of the trial court, and we will not overturn its determination absent an unsustainable exercise of discretion. State v. Woodbury, 172 N.H. 358, 370 (2019); Hodgdon v. Weeks Mem. Hosp., 128 N.H. 366, 368 (1986). Likewise, the trial court has broad discretion over the management of discovery and the conduct of the proceedings before it, and we will not overturn its decisions on such matters absent unsustainable exercises of discretion. Blagbrough Family Realty Trust v. A & T Forest Prods., 155 N.H. 29, 40 (2007). To demonstrate an unsustainable exercise of discretion, it is the defendants' burden to establish that the trial court's ruling was clearly untenable or unreasonable to the prejudice of their case. Woodbury, 172 N.H. at 370.

This case arises out of a failed real estate transaction. The record establishes that at some point on or before May 3, 2013, the plaintiff, a dual citizen of Egypt and the United States, and Vatche Manoukian, a neighbor of the plaintiff when he is in the United States, entered into an agreement to purchase a commercial property located at 100 Northeastern Boulevard in Nashua for $2,700,000. Either Manoukian or a member of his family has ownership or management interests in 100 NEB and MHREM; the plaintiff has never had an interest in either entity. Under the agreement, the plaintiff would pay the first $100,000, Manoukian would make a second payment of $100,000, the plaintiff and Manoukian would divide a third payment of $300,000, and they would obtain seller financing for the remainder of the purchase price. The plaintiff and Manoukian never reduced their agreement to writing.

On May 3, 2013, the owners of the property executed a letter of intent (LOI) to sell the property to defendant 100 NEB "and/or [its] assigns." At that point, 100 NEB had not yet been formed, and would not be formed until September 2013. The LOI was accepted on behalf of 100 NEB by Manoukian, whose signature was followed by the designation, "Manager," and by the plaintiff, whose signature was not followed by any designation. The LOI called for a total sale price of $2,700,000, with $100,000 due upon execution of the LOI, $100,000 due upon the execution of a purchase and sale agreement, $300,000 to be paid at a closing to occur on or before September 1, 2014, and

2

$2,200,000 to be financed by the seller. As set forth in the LOI, the plaintiff paid the sellers $100,000 on May 3.

On August 2, 2013, the sellers of the property entered into a purchase and sale agreement (P&S) with 100 NEB. At that point, 100 NEB still had yet to be formed. The terms of the P&S were generally consistent with the LOI, acknowledging the May 3 deposit of $100,000, and requiring a second payment of $100,000 by July 30, 2013, a $300,000 payment at a closing to occur on or before September 14, 2014, and seller financing of $2,200,000. On August 2, the sellers and 100 NEB entered into an amendment of the P&S extending the deadline for the second $100,000 payment to August 31, 2013. The signature pages for both the P&S and its amendment identified the sole purchaser as "100 NORTHEASTERN BOULEVARD, LLC"; directly underneath the designation of 100 NEB as the purchaser on each signature page was a typewritten signature block stating, "By: Vatche Manoukian, Manager," which Manoukian signed. Directly underneath Manoukian's signature block on both signature pages was a hand-printed signature block stating, "By: Mohamed Hafez." The hand-printed signature blocks also contained a signature.

In September 2014, the plaintiff contacted the sellers to inquire about the closing, and was told that he was not the buyer, but that 100 NEB was the buyer. The closing did not occur, and the plaintiff demanded that 100 NEB return his $100,000 deposit. 100 NEB initially agreed to refund the deposit, but stated that it would "need time . . . to find another investor." When the plaintiff did not receive the refund, he filed suit alleging claims sounding in breach of contract and unjust enrichment. The defendants counterclaimed for breach of contract, alleging that the plaintiff did not "comply[] with his agreement as an investor in" 100 NEB and failed to complete the terms of the P&S, causing MHREM to lose its investment in the P&S and 100 NEB to lose a potential sale. Manoukian was not named as a party to the suit.

In his complaint, the plaintiff alleged that "[u]pon information and belief, [he] did not actually sign the [P&S], and furthermore, no individual was authorized to sign the [P&S] on [his] behalf." At trial, the plaintiff testified that he did not recall signing the P&S, that he was in New York on August 2, 2013, and that the signature on the P&S did not look like his signature. On cross-examination, he testified that he did not sign the P&S. Also at trial, the defendants introduced an e-mail dated September 20, 2012 purporting to be from the plaintiff to Manoukian, and stating that he had authorized his bank in Egypt to wire Manoukian's bank $250,000. The plaintiff testified that he did not recall sending the e-mail, that his name was misspelled in the e-mail, that he would never have misspelled his own name, that the text of the e-mail did not look like language he would use, and that he did not think he had sent the e-mail. Manoukian testified that he received the e-mail, that the $250,000 referenced in the e-mail was to invest in New Hampshire properties, but that the $250,000 was not for any specific property, but "[j]ust to buy properties."

3

The trial court ultimately awarded the plaintiff the $100,000 he had paid to the owners of the property, and approximately $27,000 that he had paid to MHREM for expenses in connection with the transaction, under a theory of unjust enrichment. In so ruling, the trial court concluded that there was no enforceable agreement between the plaintiff and the defendants and, thus, that neither the plaintiff nor the defendants could prevail on their contract claims.

At the outset of its analysis, the trial court remarked that "significant credibility and evidentiary issues . . . pervaded this trial." The court found that the plaintiff had "credibly testified" that he had not, in fact, signed the P&S or its amendment and, thus, that his signature had been forged. Additionally, the court found that the plaintiff had "credibly testified" that he had not sent the September 20, 2012 e-mail, and that the e-mail "was almost certainly doctored." Finally, the trial court observed that "documents that would support the defendants' version of events were conveniently missing." Specifically, the court noted that, despite Manoukian's testimony that the August 31, 2013 $100,000 payment had been made, there was no "written documentation evidencing that payment." "Given the amount of the payment and its importance," the trial court observed, "it is inconceivable that neither the payor nor the payee would produce a copy of that check, either from their own records or from bank records." Similarly, the trial court noted that "the defendants could provide no evidence regarding the purported expenses."

As to the merits of its determination that there was no contract, the trial court observed that 100 NEB was not in existence at the time of the agreement between the plaintiff and Manoukian, and that the plaintiff had not sued Manoukian. Moreover, the trial court found that, even if 100 NEB had capacity to contract, there was no meeting of the minds. Specifically, the trial court noted that, according to the plaintiff, he was to be an owner of the property, and not merely an investor. By contrast: (1) Manoukian had testified that he was to purchase the property for his "family"; (2) Manoukian had told the plaintiff at the time of their negotiations that a transaction was already "in the works," and that the plaintiff was only to be "involved" in it; (3) 100 NEB, in its September 2014 letter agreeing to refund the plaintiff's $100,000, stated that it would need to find "another investor"; and (4) the LOI was ambiguous as to ownership because it identified the buyer as 100 NEB "and/or assigns," but was executed by Manoukian on behalf of 100 NEB and by the plaintiff in an apparent individual capacity. As to the last point, the trial court observed that if 100 NEB were the buyer, the plaintiff would not have needed to sign the LOI at all. Accordingly, the trial court ruled that there was no meeting of the minds as to ownership, "a key provision of the deal." Finally, the trial court found that "there appears to be a genuine dispute as to the identities of the parties to the contract." As to this point, the trial court observed that although the plaintiff had "credibly testified that he thought he was purchasing the property with Mr. Manoukian," Manoukian's signature on the LOI put the plaintiff on notice that Manoukian was acting on behalf of 100 NEB. The trial court

4

further noted that "the plaintiff credibly testified that he never signed the P&S." We affirmed the trial court's decision. See Hafez v. 100 Northeastern Boulevard, LLC, No. 2017-0316, 2018 WL 2731254 (N.H. May 4, 2018).

Following our order affirming the trial court's decision, the defendants moved for a new trial. In their motion, the defendants asserted that they had newly-discovered evidence that the plaintiff had testified falsely in the prior trial he had not signed the P&S, and that he had not sent the September 20, 2012 e-mail. Specifically, the defendants asserted that they had retained a handwriting expert who would opine that the signature on the P&S was from the plaintiff, and a computer expert who would opine that the September 20, 2012 e-mail came through the same internet service provider in Egypt as another e-mail that the plaintiff had sent.

Prior to the evidentiary hearing on the motion, the defendants sought to depose the plaintiff. Although the trial court initially granted a motion to compel his deposition, it subsequently vacated its order, sua sponte, reasoning that the hearing on the motion for a new trial was "for a very limited purpose—to allow the defendants to present the 'new' evidence referenced in their motion—specifically, the testimony of their . . . experts," and that such testimony did not require the plaintiff's deposition. Shortly before the hearing, the plaintiff moved to excuse his presence from it, asserting that he was then in Egypt and that his presence was unnecessary, and providing specific dates when he would be in New Hampshire. The trial court granted the request, noting that it would keep the record open after the hearing, and if it determined that the plaintiff's testimony was required to decide the motion, it would schedule a further hearing date when the plaintiff would be in New Hampshire.

The trial court denied the motion without requiring the plaintiff's further testimony. With respect to the defendants' claim that the plaintiff had perjured himself, the trial court assumed, without deciding, that the plaintiff's testimony regarding whether he had signed the P&S or sent the September 20, 2012 e-mail was both false and dishonest. Even with those assumptions, the trial court reasoned that such testimony did not relate to material issues, and that it had considered the testimony only to assess the credibility of the witnesses. The trial court observed that "there were other, far more important reasons why the Court found the plaintiff's version of events to be more credible apart from his testimony on these two peripheral matters, the most important of which was his ability to corroborate the material parts of his testimony with written documentation and the defendants' corresponding failure to do the same." With respect to the defendants' claim that they were entitled to a new trial based on newly-discovered evidence, the trial court reasoned that: (1) the defendants were at fault for not discovering the new evidence at the prior trial because they never engaged in pretrial discovery; and (2) the new evidence would not have changed the outcome because it was neither relevant to the merits nor central to the trial court's credibility determinations.

5

On appeal, the defendants argue that the plaintiff "signed the [P&S] as the buyer," and that their counterclaim "was premised on the validity of the" P&S. Had the trial court found that the plaintiff executed the P&S, according to the defendants, he would have been "a co-buyer with 100 NEB according to the" P&S and the LOI. Thus, the defendants argue that testimony that the plaintiff did, in fact, sign the P&S and its amendment and send the September 20, 2012 e-mail "support the position that the Plaintiff was a co-purchaser and the parties had an agreement to co-purchase the property." Under these circumstances, the defendants assert that the trial court erred by finding that the alleged perjury did not concern material matters, and that the new evidence would not have changed the outcome. The defendants further challenge the trial court's determination that they were at fault for not discovering the new evidence at the prior trial, its decisions not to compel the plaintiff's deposition or his attendance at the hearing, and not to rule upon their requests for findings of fact and rulings of law.

Contrary to the defendants' arguments, the P&S was an agreement purporting to be between the owners of the property and 100 NEB. It was not a contract between the owners and the plaintiff. Nor was it a contract between 100 NEB and the plaintiff. Nowhere in the P&S is the plaintiff ever defined as "buyer." Rather, the sole "buyer" is expressly defined as 100 NEB, a company in which the plaintiff has never held an interest, and the signature blocks, "By: Vatche Manoukian, Manager" and "By: Mohamed Hafez" that appear directly below the buyer designation of 100 NEB indicate only that the signatories were executing the contract on behalf of 100 NEB. Accordingly, as the trial court had observed with respect to the LOI, the plaintiff's signature on the P&S, even if authentic, is at best ambiguous as to ownership, and would not have established that the plaintiff and 100 NEB ever had a meeting of the minds as to ownership so as to create an enforceable contract. With respect to the September 20, 2012 e-mail, Manoukian specifically testified that it did not concern any specific property.

Upon this record, we cannot say that the trial court unsustainably exercised its discretion by determining that the plaintiff's testimony regarding whether he had signed the P&S or sent the e-mail did not concern material issues, and that newly-discovered evidence that such testimony was false would not affect the outcome of the case. Woodbury, 172 N.H. at 370. Accordingly, we need not address whether the trial court erred by concluding that the defendants were at fault for not discovering the new evidence at the prior trial. Nor could we say that the trial court's decisions not to compel the plaintiff's deposition with respect to the motion for a new trial or his attendance at the hearing on the motion were clearly untenable or unreasonable to the prejudice of the defendants' case. Id. With respect to the defendants' argument that the trial court erred by not ruling upon their specific requests for findings of fact and rulings of law, the trial court was not required to rule upon the requests because it issued a narrative order that explained its

6

rulings and articulated the basic or essential facts supporting its rulings. Birch Broad. v. Capitol Broad. Corp., 161 N.H. 192, 201 (2010).

We have considered the defendants' remaining arguments, and conclude that they are either insufficiently developed, see State v. Blackmer, 149 N.H. 47, 49 (2003), or otherwise do not warrant further discussion, see Vogel v. Vogel, 137 N.H. 321, 322 (1993).

Affirmed.

Hicks, Bassett, and Donovan, JJ., concurred.

**Timothy A. Gudas,
Clerk**