Rockingham,
No. 4237.

JUDITH S. WISEMAN, *Ind. and as Adm'x & a.*

*v.*

STATE.

Argued November 4, 1953.
Decided December 21, 1953.

*Leo Liberson* (by brief and orally), for the plaintiffs.

*Louis C. Wyman*, Attorney General, and *George F. Nelson*, Assistant Attorney General (*Mr. Nelson* orally), for the State.

DUNCAN, J. The issue presented by the exceptions is whether the plaintiffs' pleadings state a cause of action which may be maintained against the defendants. It is axiomatic that the State is not subject to suit without its consent. *Bow* v. *Plummer*, 79 N. H. 23, and cases cited; *Moore* v. *Dailey*, 97 N. H. 278. To establish such consent the plaintiffs rely upon Laws 1951, *c.* 243, conferring jurisdiction upon the Superior Court "to enter judgment against the State of New Hampshire founded upon any express contract with the state." The question is whether a judgment rescinding the alleged contract between Cohen and the State and cancelling his release of access rights given in consideration of promises of the State not fulfilled, would be such a judgment as is authorized by the statute.

The statute adopted in 1951 resulted from recommendations of the Judicial Council made following a request by the Reorganization Commission in 1950, that the former "study and report on the advisability of a court of claims." The Council was of the opinion that no good reason appeared why the State should not consent to judicial determination of claims against the State arising out of express or implied contracts (Third Report, Judicial Council, 41) and proposed a legislative bill designed to provide the recommended consent. *Ib.*, 69. The proposed bill became House Bill 413 at the 1951 session of the Legislature. Before passage the bill was amended by striking out of the title the

reference ·to actions founded on "implied contract," and by substituting a new section 1 which likewise eliminated the reference to "implied contract," and altered the procedure provided for payment of a "claim founded upon a judgment against the state" so as to require such a claim to be presented to the Attorney General rather than the Comptroller. The amended section described the jurisdiction conferred as jurisdiction to enter "judgment against the state . . . founded upon any express contract with the state," rather than "judgment upon any claim against the state," founded upon such a contract. Journal of the Senate (1951) 315.

It is readily apparent from the history of the act that the Legislature intended to withhold consent to the entry of judgments upon "implied contract," although this limitation has since been removed. Laws 1953, c. 83. But so far as we can perceive, no significance is to be attached to the omission in the amended bill of the words "upon any claim" which modified the word "judgment" in the original draft. In view of the indicated purpose to limit rather than broaden the jurisdiction proposed, no contrary purpose is to be attributed to use of the phrase "judgment . . . founded upon any express contract" in place of "judgment upon any claim" so founded. Rather it seems likely that the words were omitted by inadvertence, or for simplification.

In its recommendations the Judicial Council made reference to the Tucker Act, so-called, enacted by Congress in 1887. 24 Stat. 505. See 28 U. S. C. A., s. 1346. The Act is in some respects analogous to Laws 1951, c. 243. Thus it confers jurisdiction of "any . . . claim against the United States . . . founded . . . upon any express or implied contract with the United States." S. 1346 (a) (2). It likewise confers jurisdiction of any set-off in favor of the United States against the claimant. 28 U. S. C. A., s. 1346 (c). Cf. Laws 1951, c. 243, s. 1.

In United States v. Jones, 131 U. S. 1, a suit for specific performance brought under the Tucker Act was dismissed upon the ground that consent had been given to the entry of judgments against the United States only upon money claims, despite provisions of the Act for redress "either in a court of law, equity, or admiralty." Cf. 28 U. S. C. (1940 ed.) s. 41 (20). The statute was later interpreted to limit equitable relief to suits seeking money damages for breach of contract. United States v. Milliken Imprinting Co., 202 U. S. 168, 173, 174; Cramp v. United States, 239 U. S. 221. See also, Admiral Oriental Line v. United States, 86 F. (2d) 201, 204; Admiral Oriental Line v. Atlantic Gulf &c. Co., 88 F. (2d)

26; *Welch* v. *Hamilton*, 33 F. (2d) 224; *Young* v. *Anderson*, 160 F. (2d) 225, *cert. den.* 331 U. S. 824. *Cf. The Chicago, M. & St. P. Ry. Co.* v. *The State*, 53 Wis. 509.

Laws 1951, *c.* 243, contains no reference to redress in equity and therefore requires *a fortiori* an interpretation which limits the consent given to actions for the recovery of damages. The procedure established by the Legislature for satisfaction of the judgment permitted, either by "manifest . . . for payment" or by legislative appropriation, indicates that a judgment for the payment of money was contemplated. Furthermore the use of language so closely paralleling that of the federal act suggests a purpose to carry with it the interpretation given to the language of that Act. See *Keene* v. *Roxbury*, 96 N. H. 233; *Bolduc* v. *Company*, 96 N. H. 235, 238.

We conclude that the relief sought by the bill would not be such a "judgment . . . founded upon any express contract" as is permitted by Laws 1951, *c.* 243. It follows that the bill was properly dismissed as to the State, unless consent to its maintenance is to be found in other enactments.

Laws 1947, *c.* 295, cited in the bill, authorized construction of a toll road between Portsmouth and Seabrook at the Massachusetts line. It further authorized the purchase or condemnation of interests in land for that purpose. *S.* 2(b). Condemnation was to be "as provided by statute." *Ib.* The provisions for condemnation are to be found in Laws 1945, *c.* 188, also relied upon by the plaintiffs. However R. L., *c.* 90, *pt.* 4, *s.* 15, as there amended, provides no consent to the maintenance of an action such as this. This section merely permits the State to interplead where dispute arises either over the title to property acquired by the State or over the person entitled to damages therefor. It is apparent from the context that the section relates to property acquired by condemnation, and it has no application here.

As against the State the plaintiffs' bill may not be maintained. The question remains whether it may be maintained against the Commissioner of Public Works and Highways. We think that it may not. The action of the Commissioner which the plaintiffs allege constituted a contract with their intestate was authorized by statute. Laws 1947, *c.* 295, *ss.* 2, 3. Acting under this statute the Commissioner took the release from Cohen which operated to vest an interest in the State. The transaction may not be successfully attacked as an *ultra vires* act in which the State has no interest. *Bow* v. *Plummer*, 79 N. H. 23, *supra*, 26, 27. See *St. Regis Co.* v.

*Board,* 92 N. H. 164, 169; *Conway* v. *Water Resources Board,* 89 N. H. 346, 348; *Larson* v. *Domestic & Foreign Corp.,* 337 U. S. 682, 689; *Ferris* v. *Wilbur,* 27 F. (2d) 262.

The contention that Laws 1949, *c.* 303, *s.* 3, operated to cancel the release given by Cohen cannot be adopted. This statute became law after the date of Cohen's conveyance to the State and struck out the provisions by which the entire toll road was made a limited access highway. Laws 1947, *c.* 295, *s.* 10. However, it provided that it should be such a highway to "the northeasterly side line of Woodbury Avenue in the city of Portsmouth," (which is beyond the plaintiffs' land) and that all provisions of Part 7 of the Highway Law of 1945 (Laws 1945, *c.* 188) "shall apply thereto except the transfer of the entrance of an existing facility . . . from the northwesterly side . . . to the southeasterly side" of the toll road. The "facility" referred to was a Howard Johnson restaurant, then located on the opposite side of the road, which was later removed to a portion of the premises on the approach road owned by Cohen when the statute was enacted, and later conveyed by him for use by the restaurant, by deed dated October 15, 1949, pursuant to an option dated August 9, 1949.

The point is made that on the date when Laws 1949, *c.* 303, became effective the premises to which the existing facility was to be removed constituted a part of the premises access from which was released by Cohen. We think that the legislative exception from the limited access restriction, while not artistically phrased, related to the "existing facility" rather than the lot to which it was to be transferred. The intention disclosed was to exempt the facility, not the land owned by Cohen. We therefore cannot adopt the contention that the land now owned by the plaintiffs which adjoins but has no relation to the "facility" has been made exempt from restrictions.

The action of the Commissioner, alleged to interfere with the plaintiffs' right of access, is within his authority, and taken in the right of the State. Laws 1947, *c.* 295, *ss.* 2, 3, *supra.* Since the action of the defendant Commissioner is within his authority, the bill for an injunction restraining his action is in fact and in effect an action against the State (*Bow* v. *Plummer, supra*) and since the State has given no consent to this action against it, the action may not be maintained.

*Exception overruled.*

All concurred.