NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-11863

RANDALL TRAPP & another[1]  vs.  GARY RODEN[2] & others.[3]


Worcester.      October 5, 2015. - November 23, 2015.

Present:  Gants, C.J., Spina, Cordy, Botsford, Duffly, Lenk,
& Hines, JJ.


Commissioner of Correction.  Imprisonment.  Religion.  Contract,
    Settlement agreement, Performance and breach.



Civil action commenced in the Superior Court Department on
September 30, 2010.

The case was heard by Cornelius J. Moriarty, II, J.

The Supreme Judicial Court on its own initiative
transferred the case from the Appeals Court.


Richard C. McFarland for the defendants.

_____

[1] Robert Ferreira.

[2] Individually and in his official capacity as
superintendent of the Massachusetts Correctional Institution at
Norfolk (MCI-Norfolk).

[3] Cynthia Sumner, individually and in her official capacity
as deputy superintendent of MCI-Norfolk, and Harold W. Clarke,
individually and in his official capacity as Commissioner of
Correction.

Jarrett M. Scarpaci for the plaintiffs.
The following submitted briefs for amici curiae:
Maggie Ellen Filler for Prisoners' Legal Services.
Joel West Williams, of Pennsylvania, & Gabriel S. Galanda, of Washington, for Huy.
Yale Yechiel N. Robinson, pro se.

DUFFLY, J.  Randall Trapp and Robert Ferreira, who are adherents of Native American religious practices, are both incarcerated at Department of Correction (DOC) facilities.  In 2010, Trapp and Ferreira filed an amended complaint in the Superior Court contending, among other things, that the DOC's closure of the purification lodge[4] at the Souza-Baranowski Correctional Center (SBCC) violates the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. §§ 2000cc-1 et seq. (2012) (RLUIPA); art. 2 of the Massachusetts Declaration of Rights; and a settlement agreement reached in 2003 to resolve a prior lawsuit brought by Trapp against the DOC.  The complaint named Gary Roden, Commissioner of Correction, and two DOC employees at the Massachusetts Correctional Institution at Norfolk (MCI-Norfolk) as defendants.  After a jury-waived trial in July, 2012, a Superior Court judge concluded that the closure of the lodge at SBCC violated the plaintiffs' rights under all three asserted theories, and entered a declaratory judgment in

---

[4] The parties use the term "purification lodge," while the term "sweat lodge" also is used by other Native American practitioners.  For simplicity, we use the more general term "lodge" to encompass all such structures.

favor of the plaintiffs on those claims.[5]  The DOC appealed, and
we transferred the case to this court on our own motion.  We
conclude that the closure of the lodge at SBCC violates RLUIPA
and the settlement agreement.  Accordingly, we do not reach the
constitutional question.[6]

    Background.  The dispute at the crux of this case dates
back two decades.  In 1995, Trapp and four other inmates
(Ferreira was not among them) filed a complaint in the Superior
Court asserting that the DOC had violated their rights to
exercise their religion.  After extensive litigation over a
number of years, in 2003 the parties entered into a settlement

---

[5] The plaintiffs' amended complaint asserted seven claims
against the Department of Correction (DOC), among them State and
Federal constitutional claims and several statutory claims
arising out of the closure of lodges at MCI-Norfolk and the
Souza-Baranowski Correctional Center (SBCC); the DOC's refusal
to permit the plaintiffs to use kinnick-kinnick, which includes
tobacco as an ingredient; and the DOC's refusal to permit the
plaintiffs to use prayer beads of the color of their choice.

With respect to the claims regarding SBCC, the Superior
Court judge entered declarations for the plaintiffs on the
constitutional claim under art. 2 of the Massachusetts
Declaration of Rights, the statutory claim under the Religious
Land Use and Institutionalized Persons Act of 2000, 42 U.S.C.
§§ 2000cc-1 et seq. (2012) (RLUIPA), and the contract claim for
breach of the settlement agreement.  The judge entered
declarations in favor of the defendants on all the other claims
in the complaint; the plaintiffs have not filed cross appeals on
those counts.  Thus, the issues before us concern only the DOC's
closure of the lodge at SBCC.

[6] We acknowledge the amicus briefs of Huy and Prisoners'
Legal Services on behalf of the plaintiffs, and the amicus brief
of Attorney Yale Yechiel N. Robinson.

agreement that required the DOC to construct a lodge at SBCC and another facility not at issue in this appeal.[7] Under the terms of the agreement, the named plaintiffs and others who participate in Native American religious practices were promised the right to participate in ceremonies that were to be conducted at the lodges once each month. The settlement agreement contained protocols setting forth the manner in which the lodges were to be constructed and the ceremonies conducted, all based on the traditions of the Wampanoag Tribe. Further, the settlement agreement provided that the protocols could be altered if necessary as security needs dictated, but that such changes were to be made in consultation with the Massachusetts Commission on Indian Affairs.

Under the protocols set forth in the settlement agreement, a lodge is constructed of sixteen saplings arranged in a circle and then bent and joined together to form a dome, which is covered by blankets or canvas. A pit is dug in the ground in the middle of a lodge, to make space for rocks that are placed in it after they have been heated by a wood fire outside the lodge. During a ceremony, water is poured onto the heated rocks to create the steam and heat necessary for the ceremony. The settlement agreement required the lodges to be constructed

---

[7] The settlement agreement also required the DOC to construct a lodge at MCI-Norfolk.

within a secured perimeter inaccessible to the general inmate population.

The DOC built a lodge at SBCC in 2004  Within six months, however, it halted all ceremonies at the SBCC lodge, citing health concerns that resulted from smoke filtering into the main building from the wood fires used to heat the rocks.  According to the DOC, the SBCC facility has a closed ventilation system that does not permit windows to be opened; rather, air is pumped into the building in accordance with the amount of air required per person by law.  The DOC maintains that asthmatics working or residing within the facility complained of respiratory distress, compelling closure of the lodge.

Trapp commenced this action in September, 2010; Ferreira was added as a plaintiff in November of that year.  At all times relevant to this litigation, Trapp has been incarcerated at MCI-Norfolk.  Ferreira was incarcerated at MCI-Norfolk until February, 2012, when he was transferred to SBCC.

In January, 2011, a Superior Court judge,[8] ruling on the DOC's motion to dismiss, determined that because Ferreira was not a party to the 2003 settlement agreement he could not pursue any contract-based claims against the DOC based on breach of that agreement.  The motion judge also concluded that the

---

[8] The motion to dismiss and the ultimate merits of the action were decided by different Superior Court judges.

plaintiffs could not recover damages because they had failed to exhaust their administrative remedies, and that therefore they could seek only equitable relief. A jury-waived trial was held on the merits of the plaintiffs' statutory, constitutional, and contract claims in July, 2012; the trial involved numerous claims not at issue here. The trial judge issued his decision in September, 2012. As relevant to the DOC's appeal, the trial judge concluded that the closure of the lodge at SBCC violated RLUIPA, the settlement agreement, and art 2.

The trial judge rested his conclusions on two findings of fact. First, the judge found the closure of the lodge at SBCC was not based on security-related concerns but, rather, "on unconvincing references to health concerns" that "consisted of hearsay statements, which themselves offered dubious self-diagnoses, such as asthma, without any medical foundation." Second, the judge found that the DOC "provided no reason to believe that the only feasible means of remedying the smoke inhalation problem was . . . by stopping the purification ceremonies altogether." Specifically, the judge found that the DOC "said nothing to explain" why filtering the air inside the building or placing the lodge in a location that would disperse the smoke were not reasonable alternatives.[9]

_____

[9] The DOC has provided a sparse record on appeal. It is thus unclear how, if at all, the DOC responded to these

Discussion. The DOC challenges the trial judge's factual findings that it failed to provide adequate evidence in support of its asserted health concerns as the basis for closing the lodge. The DOC also argues that the trial judge erred in concluding that the DOC failed to meet its burden, under 42 U.S.C. §§ 2000cc-1(a), to show that closing the lodge was in furtherance of a compelling government interest and was the least restrictive means possible. Finally, the DOC argues that the trial judge erred when he concluded that the DOC committed a breach of the 2003 settlement agreement by closing the lodge.

We conclude that the trial judge's findings of fact were not clearly erroneous, see Sheriff of Suffolk County v. Jail Officers & Employees of Suffolk County, 465 Mass. 584, 588 (2013), and that the judge was correct in determining that the closure of the lodge violates RLUIPA and the settlement agreement.

1. Whether the DOC's closure of the SBCC lodge violates RLUIPA. The parties agree that only Ferreira's rights are implicated under RLUIPA because he was the only plaintiff who, at the time of trial, was incarcerated at SBCC and, thus, could be burdened by the closure of the lodge. Under RLUIPA's well-established burden-shifting analysis, Ferreira bore the initial

alternatives in the proceedings in the Superior Court. On appeal, the DOC offers no comment on whether these alternatives discussed by the trial judge are reasonable.

burden to prove that DOC's closure of the lodge at SBCC "substantially burdens" his religious exercise.  See Holt v. Hobbs, 135 S. Ct. 853, 862 (2015) (Holt).  Once he met this initial burden, the burden shifted to the DOC to show that its closure of the lodge was "in furtherance of a compelling governmental interest" and was "the least restrictive means of furthering that compelling governmental interest."  Id. at 863, quoting 42 U.S.C. § 2000cc-1(a).

There is no dispute that Ferreira met his burden to establish that participation in Native American ceremonies at the lodge constitutes religious exercise as defined by the statute.  RLUIPA protects "any exercise of religion, whether or not compelled by, or central to, a system of religious belief," 42 U.S.C. § 2000cc-5(7)(A), as long as the exercise is based on "a sincerely held religious belief."  Holt, supra at 862, citing Burwell v. Hobby Lobby Stores, Inc., 134 S. Ct. 2751 (2014).  The DOC does not challenge the sincerity of Ferreira's exercise or belief.

Rather, the DOC argues that Ferreira has failed to prove that the inability to use the lodge for ceremonies is a substantial burden on his religious exercise because he still has alternative ways of "engaging in Native American practices."

Specifically, the DOC points to the availability of smudging[10] and pipe ceremonies at SBCC, along with other ceremonies such as "talking circles, singing, chanting, and the playing of musical instruments, including drums, rattles and a flute." Additionally, the DOC asserts that Ferreira has access to Native American "ceremonial items" to facilitate the exercise of his religion, including a headband, prayer beads, and a pipe. In short, the DOC contends that it has not substantially burdened Ferreira's exercise of religion by closing the lodge because he has other ways to practice his religion.

The United States Supreme Court's recent decision in Holt, supra at 862, forecloses the DOC's argument, as counsel conceded during argument before us. In Holt, the petitioner, a devout Muslim inmate, challenged a decision of the Arkansas Department of Correction refusing to grant him an exception to its no-beard policy by permitting him to grow a one-half inch beard in accordance with his religious beliefs. Id. at 859. The United States District Court for the Eastern District of Arkansas concluded that the no-beard policy did not substantially burden Holt's exercise of religion because he had been given a prayer rug and a list of distributors of Islamic material, he was

---

[10] According to a DOC religious services handbook, smudging "is a process of using smoke to clear away negative energies and to attract positive energies," using sage, sweetgrass, and other plants to produce smoke.

permitted to correspond with a religious advisor, and he was permitted to observe holidays and maintain his desired diet. Id. at 862. Rejecting the District Court's analysis, the United States Supreme Court explained that "RLUIPA's 'substantial burden' inquiry asks whether the government has substantially burdened religious exercise . . . , not whether the RLUIPA claimant is able to engage in other forms of religious exercise." Id.

Here, as in Holt, the alternate means Ferreira may have to practice his religion are irrelevant to the analysis of whether the DOC's closure of the lodge substantially burdens his religious exercise. The DOC offers no additional argument in support of its position. Thus, we have no trouble concluding that the DOC's absolute closure of the lodge at SBCC substantially burdens Ferreira's exercise of religion. See Cutter v. Wilkinson, 544 U.S. 709, 721 (2005) ("RLUIPA . . . protects institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion").

The DOC contends that even if the closure of the lodge at SBCC substantially burdens Ferreira's exercise of religion, it still should prevail because the closure was in furtherance of a compelling governmental interest and was the least restrictive

means of furthering that interest.

The DOC has not identified evidence in the record to counter the trial judge's factual finding that the DOC failed to provide credible evidence in support of its asserted health justification.  Rather, the DOC emphasizes, as it did at trial, the statements of two witnesses, each of whom provided testimony in support of the health concerns on which the DOC's argument relies.  The first witness, Lynn Chernesky, a DOC employee, testified that, as a result of smoke from the wood fires used for the lodge ceremonies entering the building, "all our asthmatic staff and inmates became in distress."  Chernesky's testimony does not explain how she came to know of the supposed distress of the "asthmatic staff and inmates," such as whether they complained directly to her, whether she read complaints they had filed with someone else, or whether some third source relayed the information to her.  The DOC fails to point to any evidence in the record to support Chernesky's conclusory generalizations or counter the factual finding that her testimony was unpersuasive.  Further, we note in this regard that the DOC did not call a single inmate or DOC employee to testify about any distress, even minor, he or she may have personally experienced as a result of the wood fires burning outside during the monthly ceremonies.

The second witness whose testimony the DOC identifies in

support of the compelling nature of its health interest is Todd Gunglach, a DOC engineer, whose expertise is in heating and ventilation systems. Gunglach testified to the operation of the closed ventilation system at SBCC. When asked whether he was familiar with the attempts to operate the lodge at SBCC, Gunglach responded that he was only familiar with a report commissioned by the DOC that, he stated, had concluded that it was "virtually impossible" to operate the lodge without smoke from the wood fires entering the facility. The report Gunglach referenced was not introduced in evidence, and is not part of the record before us. In any event, the DOC fails to identify any portions of Gunglach's testimony that support the contention that the smoke from the fires caused health concerns. Rather, when asked whether he knew of any physical harm to people's health caused by indoor smoking at SBCC, not the wood fires burned outside, Gunglach responded, "Well, I'm not a physiologist. I mean, we hear oftentimes about second-hand smoke and its effects on people. So just from basic knowledge of the news and media reports of second-hand smoke, that's what I would be aware of."

Based on the testimony of Chernesky and Gunglach, who provided the sole support for the DOC's argument, the trial judge concluded that the DOC's evidence supporting any compelling interest of health concerns was unpersuasive. We

cannot conclude that this finding was clearly erroneous. We agree that the DOC has failed to meet its burden by demonstrating that its decision to close the lodge at SBCC was motivated by a compelling government interest.

We do not, however, read the trial judge's opinion to have concluded that health concerns may never serve as a compelling government interest under RLUIPA, as the DOC maintains it does. It is uncontroverted that the DOC has an interest in caring for the health of inmates in its custody. See, e.g., Helling v. McKinney, 509 U.S. 25, 33 (1993) ("We have great difficulty agreeing that prison authorities may . . . ignore a condition of confinement that is sure or very likely to cause serious illness and needless suffering the next week or month or year"); Good v. Commissioner of Correction, 417 Mass. 329, 335 (1994) ("Recognizing that prison inmates are entitled to safe drinking water, the Department of Public Health requires that correctional facilities in the Commonwealth must provide at all times safe and sanitary drinking water"); Cryer v. Massachusetts Department of Correction, 763 F. Supp. 2d 237, 243 (D. Mass. 2011) (prison ban on smoking in cells furthers compelling government interest of health and safety).

The fatal flaw in the DOC's position is not that its asserted interest falls under the banner of health rather than security. Rather, in this case, the DOC cannot prevail because

it failed to meet its burden to show that the claimed compelling interest was actual rather than speculative.  Prison officials may not "declare a compelling governmental interest by fiat." Yellowbear v. Lampert, 741 F.3d 48, 59 (10th Cir. 2014).  The DOC was obligated to put forth something more than conclusory assertions regarding health concerns, and it failed to do so. The trial judge concluded that, on this record, a wood fire that burned outdoors once a month, near a facility that has a closed ventilation system, was not shown to pose a risk to the health of anyone within the facility.  The record supports this conclusion.  In reaching this result, we do not determine that the risk does not exist.  We conclude only that the evidence here was lacking and thus falls short of what RLUIPA requires. See Holt, supra at 867 (Sotomayor, J., concurring), quoting 106 Cong. Rec. 16699 (2000) ("Indeed, prison policies 'grounded on mere speculation' are exactly the ones that motivated Congress to enact RLUIPA").

Finally, even if we were to conclude that the DOC's asserted health concerns constituted a compelling government interest in these circumstances, the DOC must prove that it used the least restrictive means to further that interest.  This is an "exceptionally demanding" standard that requires the DOC to demonstrate "that it lacks other means of achieving its desired goal without a substantial burden" on Ferreira's religious

exercise.  See <u>Burwell</u> v. <u>Hobby Lobby Stores, Inc</u>., 134 S. Ct. 2751, 2780 (2014).  "A prison cannot meet its burden to prove least restrictive means unless it demonstrates that it has actually considered and rejected the efficacy of less restrictive measures before adopting the challenged practice" (quotation and citation omitted).  <u>Spratt</u> v. <u>Rhode Island Dep't of Corrections</u>, 482 F.3d 33, 41 (1st Cir. 2007).

The DOC argues that it tested three different locations at SBCC to determine whether there was a location in the yard from which smoke would not enter the ventilation system, "but without success."  Chernesky's testimony supports the DOC's assertion that it conducted three test fires, but omits any credible explanation of how she knew smoke entered the building.  Rather, when asked what happened to the staff and inmates when the test fires were conducted, Chernesky repeated her conclusory refrain that "asthmatics became in distress," leading her to conclude that "we could not have a purification lodge."

Assuming that the DOC had some reliable method to determine whether smoke entered the facility following the test fires in a quantity sufficient to cause adverse health consequences to those inside, this isolated effort fails to satisfy its burden. As the trial judge found, the DOC failed to consider whether it could filter the air within the facility, or whether it could disperse the air outside to prevent smoke from entering the

facility.  The DOC offers no explanation why neither of these alternatives was considered, or if they were considered, why they were rejected.  See Spratt v. Rhode Island Dep't of Corrections, supra at 41 n.11 ("[T]o meet the least restrictive means test, prison administrators generally ought to explore at least some alternatives, and their rejection should generally be accompanied by some measure of explanation").  See also Yellowbear v. Lampert, 741 F.3d at 63.

For all of the foregoing reasons, we conclude that the DOC's closure of the lodge at SBCC was impermissible under RLUIPA.

2.  Whether the closure of the SBCC lodge violates the 2003 settlement agreement.  As an initial matter, we consider the DOC's argument that the claim is not properly before us because both Trapp and Ferreira lacked standing to pursue a breach of contract claim based on the 2003 settlement agreement, and the plaintiffs failed to amend their complaint expressly to include a claim relating to the closure of the lodge at SBCC.

The DOC argued in its motion to dismiss that Ferreira lacked standing to enforce the 2003 settlement agreement because he was not a party to it.  The motion judge agreed. Because Ferreira has not raised this issue in a cross-appeal, we have no occasion to review it.

The DOC argues that Trapp lacks standing to enforce the

settlement agreement with respect to the closure of the lodge at SBCC because he has never been, and was not at the time of trial, confined to that facility.  This argument fails.  "A settlement agreement is a contract and its enforceability is determined by applying general contract law."[11]  Sparrow v. Demonico, 461 Mass. 322, 327 (2012).  When a party is a signatory to a contractual agreement, a breach of contract is an injury sufficient to confer standing.  See Katz v. Pershing, LLC, 672 F.3d 64, 72 (1st Cir. 2012) ("The invasion of a common-law right [including a right conferred by contract] can constitute an injury sufficient to create standing").  We conclude that, as a signatory to the 2003 settlement agreement, Trapp has a cognizable legal interest in ensuring that the DOC uphold its end of the bargain to protect the religious exercise of Native American inmates by providing a lodge for ceremonies at SBCC.  The DOC has pointed to no authority to support its position that a party to a contract alleging a breach lacks standing to pursue the claim.  See id. ("when a plaintiff

---

[11] The settlement agreement contains the following provision:

> "This Settlement Agreement shall survive this action and be independently enforceable as a contract.  All parties acknowledge that if any party fails to comply with said Settlement Agreement, it will be deemed a breach of contract and will subject the non-complying part(ies) to legal action . . . ."

generally alleges the existence of a contract, express or implied, and a concomitant breach of that contract, her pleading adequately shows an injury to her rights").

The DOC also contends that the breach of contract claim is not properly before us because the plaintiffs failed to amend their complaint expressly to include a claim arising from the closure of the lodge at SBCC.  While the amended complaint, filed in November, 2010, does not refer specifically to the closure of the lodge at SBCC, it does more generally assert that the DOC has "breached [its] contract with the plaintiffs by not allowing them to practice the Wampanoag traditions as stipulated in the contract between the parties."  Trapp asserts that the construction of lodges according to the Wampanoag traditions at three facilities, including SBCC, was a major component of the settlement agreement and thus encompassed by the amended complaint.

We need not resolve this issue because we conclude that the DOC consented to the trial judge's consideration of the claim. See Mass. R. Civ. P. 15 (b), 364 Mass. 761 (1974) ("When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings").  See Graham v. Quincy Food Serv. Employees Ass'n & Hosp., Library, & Pub. Employees Union, 407 Mass. 601, 615-616 (1990).  Here, it is

undisputed that the trial judge considered the issue whether the closure of the lodge at SBCC was lawful. The DOC does not assert that it objected to Trapp's introduction of evidence related to the closure of the lodge at SBCC.[12] To the contrary, the DOC introduced its own evidence, on which it now relies to support its arguments before us. Indeed, the only excerpts of trial testimony that the DOC has included in the record on appeal -- the testimony of Chernesky and Gunglach concerning the closure of the lodge at SBCC -- demonstrate its affirmative litigation of the issue whether it was justified in closing the lodge at SBCC. Under these circumstances, we conclude that the DOC consented to litigating the closure of the lodge at SBCC, and the claim is properly before us.

On the merits of the contract claim, the DOC argues that it has not committed a breach of the settlement agreement because the agreement contains a provision that permits altering its terms in response to institutional security concerns.

_____

[12] The DOC claims that it objected to the introduction of evidence at the motion to dismiss stage regarding the closure of the lodge at SBCC in relation to its argument that Ferreira lacked standing. But the DOC does not assert that it objected to evidence on this issue at trial. Further, we note that the DOC has not pointed to any statement in the record evidencing its objection to the introduction of evidence on the closure of SBCC, nor does the DOC contend that it raised the issue of the failure to amend the complaint to the trial judge in its motion for reconsideration. Issues not raised in the trial court are considered waived on appeal. See Carey v. New England Organ Bank, 446 Mass. 270, 285 (2006).

Specifically, the DOC contends that its health concerns, discussed above, provide a sufficient security rationale to justify the closure of the lodge.

This argument fails.  First, as discussed supra, the trial judge found that the DOC's claim that it closed the lodge at SBCC for health reasons was unsupported by the evidence.  Therefore, even if the settlement agreement permitted the DOC to close the lodge for health reasons, the DOC has failed to establish a factual predicate that would have permitted closure.

Second, even if we were to conclude that the health concerns were properly supported by evidence, the agreement requires that the protocols may be altered "in consultation with the Massachusetts Commission on Indian Affairs."  It is undisputed that the DOC failed to consult with the Commission on Indian Affairs, and thus it has violated the settlement agreement on this ground also.

Judgment affirmed.