NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by e-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Merrimack
No. 2019-0051

CLIFFORD E. AVERY

v.

COMMISSIONER, NEW HAMPSHIRE DEPARTMENT OF CORRECTIONS

Submitted: November 20, 2019
Resubmitted: July 20, 2020
Opinion Issued: November 20, 2020

Clifford E. Avery, self-represented party, by brief.

Gordon J. MacDonald, attorney general (Lisa L. Wolford and Anthony J. Galdieri, senior assistant attorneys general, on the brief), for the defendant.

New Hampshire Legal Assistance (Elliott Berry and Kay E. Drought on the joint brief), Disability Rights Center–New Hampshire, Inc., of Concord (Pamela E. Phelan and Todd R. Russell on the joint brief), and American Civil Liberties Union of New Hampshire Foundation, of Concord (Gilles R. Bissonnette and Henry R. Klementowicz on the joint brief), as amici curiae.

Paul Blackmer, by brief, as amicus curiae.

Darrin Partlow, by brief, as amicus curiae.

HANTZ MARCONI, J.  The plaintiff, Clifford E. Avery, appeals an order of the Superior Court (Ruoff, J.) dismissing his complaint for breach of contract against the defendant, the Commissioner of the New Hampshire Department of Corrections (DOC or department).  Avery argues that the trial court erred in concluding that his suit was barred by sovereign immunity and, alternatively, that he lacked standing.  After the case was submitted, we directed the parties to provide supplemental briefing on the issue of sovereign immunity and sought amicus briefing.  We now reverse and remand.

I

The following relevant facts are found either in the plaintiff's allegations, which we accept as true, or in the trial court's order, recited in the light most favorable to the plaintiff.  Alward v. Johnston, 171 N.H. 574, 576 (2018); see New England Backflow v. Gagne, 172 N.H. 655, 658 (2019); see also Beane v. Dana S. Beane & Co., 160 N.H. 708, 711 (2010) (holding that, in ruling on a motion to dismiss, the trial court may consider, among other things, "documents attached to the plaintiff's pleadings").

Avery, an inmate at the New Hampshire State Prison for Men (NHSP), sued the DOC as part of a federal, class-action, 42 U.S.C. § 1983 lawsuit, and the federal district court found that conditions at the NHSP subjected inmates to cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution.  See generally Laaman v. Helgemoe, 437 F. Supp. 269 (D.N.H. 1977); Laaman v. Warden, New Hampshire State Prison, 238 F.3d 14 (1st Cir. 2001).  The lawsuit resulted in a consent decree requiring the DOC to provide certain services to inmates confined at the NHSP, regularly inspect prison conditions, and ensure that NHSP practices, including those related to food service, medical care, mental health care, sanitation, and maintenance, comported with specified standards.  The consent decree was modified to resolve issues raised by Avery and the class of original plaintiffs in motions for contempt that alleged the DOC was violating the terms of the original decree.  On April 23, 2001, the class of plaintiffs, including Avery, and the DOC entered into an agreement (Laaman Settlement Agreement), comprised of the terms of the modified consent decree, that settled the section 1983 lawsuit and terminated federal jurisdiction over the matter, specifying that the agreement "constitute[d] a settlement agreement enforceable by the courts of the State of New Hampshire."

In July 2018, Avery filed a "Petition for Enforcement of a Settlement Agreement," suing the department for breach of contract and seeking specific performance of the Laaman Settlement Agreement.  Avery makes numerous allegations that conditions at the NHSP violate the terms of the Laaman

Settlement Agreement. For example, Avery alleges that portions of the ventilation systems in multiple housing units are deteriorating and contain holes and rust, causing the circulation of "noxious and/or unhealthy air." He alleges that the prison is overcrowded with more than double the population permitted by relevant standards and that there is a lack of required toilet facilities, both of which contribute to the "the decrepit state of these housing units." He alleges that the NHSP pharmacy cannot fill prescriptions in a timely manner, that required programs are not being offered or are significantly understaffed, and that required inspections are not being undertaken. He alleges that "[c]ontaminated waste water, i.e., biological matter," leaks onto food preparation areas, meals, and the floor of the Food Service Department, and that the attempt to resolve this issue involved putting up tarps and hoses under the leak, which merely funnel the waste water directly onto the floors of the Food Service Department. Among other contentions, Avery additionally alleges that required counseling services, such as marital counseling, aggression management, and a pre-release program, are not being provided.

The DOC moved to dismiss Avery's complaint, arguing, among other things, that his suit was barred by sovereign immunity and that he lacked standing. Avery objected to the department's motion. The trial court granted the department's motion to dismiss, concluding that Avery's breach of contract action seeking specific performance of the Laaman Settlement Agreement was barred by sovereign immunity because RSA 491:8 (2010) (amended 2020) waived sovereign immunity only for contract actions seeking money damages. See RSA 491:8; Lorenz v. N.H. Admin. Office of the Courts, 152 N.H. 632, 635 (2005); Wiseman v. State, 98 N.H. 393, 397 (1953). The court alternatively concluded that dismissal was warranted because Avery failed to demonstrate an injury personal to himself, and, thus, lacked standing to sue for breach of the Laaman Settlement Agreement. For example, the trial court found that while Avery alleged a failure to provide required counseling services, he "has not alleged that he has or would participate in any of the described counseling." This appeal followed.

II

We apply our traditional standard of review for motions to dismiss to the legal issues presented. Alward, 171 N.H. at 580. Specifically, we review issues of law de novo. Id.

We begin with the issue of sovereign immunity. The State is immune from suit in its courts without its consent. XTL-NH, Inc. v. N.H. State Liquor Comm'n, 170 N.H. 653, 656 (2018). As a State department or agency, the DOC is "cloaked with the State's sovereign immunity."[1] Id. (quotation omitted).

---

[1] While we reference, here and throughout this opinion, the DOC as the State actor, we acknowledge that the named defendant in this action is the "Commissioner [of the] New

3

Accordingly, the DOC is immune from suit in New Hampshire courts "unless there is an applicable statute waiving immunity." Id. (quotation omitted). "Any statutory waiver is limited to that which is articulated by the legislature; thus, New Hampshire courts lack subject matter jurisdiction over an action against the State 'unless the legislature has prescribed the terms and conditions on which it consents to be sued, and the manner in which the suit shall be conducted.'" Id. (quoting Lorenz, 152 N.H. at 634 (brackets omitted)). Sovereign immunity is a jurisdictional question not to be waived by conduct or undermined by estoppel. Id. It is not a defense that must be affirmatively pled. Lorenz, 152 N.H. at 634.

RSA 491:8 provides a statutory waiver of sovereign immunity for contract actions against the State. RSA 491:8; accord Laws 2020, 12:2 (amending RSA 491:8, effective July 2020). Settlement agreements with the State are contractual in nature and thus will generally fall under the purview of RSA 491:8. See Poland v. Twomey, 156 N.H. 412, 414 (2007); see also RSA 491:8; Laws 2020, 12:2. At the time of the trial court's order, we had interpreted RSA 491:8 to provide a waiver of immunity only for contract actions seeking money damages against the State. See RSA 491:8; Lorenz, 152 N.H. at 635; Wiseman, 98 N.H. at 397. The State relied upon this interpretation of the statute in responding to Avery's appeal, arguing that the statute's limited waiver of immunity did not apply to his action, which seeks only specific performance of the Laaman Settlement Agreement.

We requested supplemental briefing from the parties and solicited amicus briefs on the issue of sovereign immunity. In July 2020, after these additional briefs were filed, RSA 491:8 was amended, and now explicitly waives the State's immunity for actions "founded upon any express or implied contract with the state, including specific performance and other equitable remedies that are not limited to money damages." Laws 2020, 12:2. Through this amendment, the legislature has made clear its intent to undo the effects of our prior cases interpreting RSA 491:8 as a waiver of sovereign immunity only for contract actions seeking money damages against the State. See id. See

---

Hampshire Department of Corrections." This is a distinction that does not materially affect the type of immunity applicable to this case — sovereign immunity, rather than official immunity — but may in other cases. See Tilton v. Dougherty, 126 N.H. 294, 297-98 (1985) (explaining "[o]fficial immunity is considered a distinct doctrine [from sovereign immunity] that shields State officials and employees themselves" and is "a derivative or extension of the doctrine of sovereign immunity"). Based upon Avery's allegations and arguments on appeal, we understand Avery to be suing the Commissioner in her official capacity as a "nominal defendant[]," who is "being sued due to [her] status as [an] agent[] of the State and for actions in which the State is the real alleged [breaching party]." Id. (applying "official immunity" in lieu of "sovereign immunity" where the defendants were not "mere nominal defendants," but were being sued "for their personal and individual acts of negligence" while acting within the scope of their employment as state employees). Correspondingly, we do not understand Avery to have alleged that the current Commissioner, herself, has personally and individually acted or failed to act in a manner that breached the Laaman Settlement Agreement. See id.

generally Lorenz, 152 N.H. at 635; Wiseman, 98 N.H. at 397. As a result of the July 2020 amendment, the State filed a motion to withdraw its defense in the instant appeal "that the Laaman Settlement Agreement cannot be enforced . . . because such a remedy [of specific performance] has not been authorized by [the] State." We granted the State's motion to withdraw this defense. Thus, we need no longer decide if RSA 491:8, prior to its amendment in July 2020, waived sovereign immunity for Avery's suit.[2]

In its motion, however, the DOC "reserves all rights and does not waive any other argument that sovereign immunity may bar this action, including the argument that the Laaman Settlement Agreement is not the type of contract contemplated by RSA 491:8 (i.e., a contract for which a legislative appropriation exists or existed)." While the DOC is "reserv[ing]" and "not waiv[ing]" other arguments that sovereign immunity bars Avery's action, we do not understand the department to be pursuing any of these arguments in the instant appeal. Therefore, there are no additional arguments for us to presently consider as to why sovereign immunity bars Avery's action.

However, if we were to simply rest on the department's withdrawal of its defense regarding the remedy of specific performance, the DOC would be entitled to raise its "reserve[d]" arguments to the trial court on remand because sovereign immunity is "a challenge to the court's subject matter jurisdiction, which may be raised at any time." Claremont School Dist. v. Governor (Costs and Attorney's Fees), 144 N.H. 590, 592 (1999); see XTL-NH, Inc., 170 N.H. at 656 (sovereign immunity is not "waived by conduct or undermined by estoppel" (quotation omitted)). This course would be contrary to the interests of judicial economy when the issue likely to arise on remand — additional argument on sovereign immunity — presents a question of subject matter jurisdiction, XTL-NH, Inc., 170 N.H. at 656, which we may address sua sponte, In re Guardianship of K.B., 172 N.H. 646, 648 (2019), and presents a question of law, which we review de novo, Conrad v. N.H. Dep't of Safety, 167 N.H. 59, 70 (2014). Cf. State v. Williams, 173 N.H. ___, ___ (decided September 18, 2020) (slip. op. at 2) ("In the interests of judicial economy, we address the arguments of the parties that are likely to arise on remand.").

We, therefore, proceed to interpret RSA 491:8, as amended in July 2020, to determine whether the State has waived sovereign immunity for Avery's action. See XTL-NH, Inc., 170 N.H. at 656. Evaluating the statute anew, in light of the language of the legislature's recent amendment, we conclude that

---

[2] Not only has the department, in response to the July 2020 amendment, withdrawn its defense that the remedy sought by Avery is outside the scope of the State's waiver of sovereign immunity, but the legislature provided that "RSA 491:8 as amended by this section 2 of this act shall apply to express or implied contracts with the state that are in effect on or after the effective date of section 2 of this act." Laws 2020, 12:3.

the State has waived sovereign immunity for Avery's action for breach of the Laaman Settlement Agreement.  See Laws 2020, 12:2.

As questions of law, issues of statutory interpretation are subject to de novo review.  See Conduent State & Local Solutions v. N.H. Dep't of Transp., 171 N.H. 414, 419 (2018).  In matters of statutory interpretation, this court is the final arbiter of the intent of the legislature as expressed in the words of the statute considered as a whole.  Id.  We first look to the language of the statute itself, and, if possible, construe that language according to its plain and ordinary meaning.  Id. at 419-20.  We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include.  Id. at 420.  We construe all parts of a statute together to effectuate its overall purpose and to avoid an absurd or unjust result.  Id.  Moreover, we do not consider words and phrases in isolation, but rather within the context of the statute as a whole, which enables us to better discern the legislature's intent and to interpret statutory language in light of the policy or purpose sought to be advanced by the statutory scheme.  Id.  Absent an ambiguity, we will not look beyond the language of the statute to discern legislative intent.  Id.

RSA 491:8, as amended in July 2020, provides:

The superior court shall have jurisdiction to enter judgment against the state of New Hampshire founded upon any express or implied contract with the state, including specific performance and other equitable remedies that are not limited to money damages. Any action brought under this section shall be instituted by bill of complaint and shall be tried by the court without a jury.  The jurisdiction conferred upon the superior court by this section includes any set-off, claim or demand whatever on the part of the state against any plaintiff commencing an action under this section.  The attorney general, upon the presentation of a claim founded upon a judgment against the state, shall submit the claim to the department or agency which entered into the contract, and said department or agency shall manifest said claim for payment from the appropriation under which the contract was entered into; provided, that if there is not sufficient balance in said appropriation, the attorney general shall present said claim to the general court for the requisite appropriation.

Laws 2020, 12:2 (emphasis added).  The emphasized language constitutes the full extent of the July 2020 amendment to the statute.  See id.

Here, Avery's complaint alleging breach of the Laaman Settlement Agreement is founded upon an express contract with the State, specifically, with the DOC.  See id.  His complaint seeks specific performance of the

6

agreement — a remedy explicitly authorized by the statute.  See id.  Should a judgment be entered against the State in this matter, the attorney general shall submit the claim to the DOC as "the department or agency which entered into the contract."  Id.

The DOC shall then "manifest said claim for payment from the appropriation under which the contract was entered into; provided, that if there is not sufficient balance in said appropriation, the attorney general shall present said claim to the general court for the requisite appropriation."  Id.  We have previously construed this language to support our interpretation that RSA 491:8, prior to the July 2020 amendment, limited the State's waiver of immunity to contract actions seeking money damages.  See Wiseman, 98 N.H. at 397 ("The procedure established by the Legislature for satisfaction of the judgment permitted, either by 'manifest . . . for payment' or by legislative appropriation, indicates that a judgment for the payment of money was contemplated.").  To the extent our previous interpretation of this language conflicts with the plain language of the newly amended statute as a whole, that interpretation is no longer suitable because we must construe all parts of the amended statute together to effectuate its overall purpose.  See Conduent State & Local Solutions, 171 N.H. at 420.

Accordingly, we now interpret the last sentence of RSA 491:8 in light of the legislature's recent amendment to its first sentence.  See id.; Chase Home for Children v. N.H. Div. for Children, Youth & Families, 162 N.H. 720, 731-33 (2011); see also Laws 2020, 12:2.  The plain and ordinary meaning of "payment" is "the act of paying or giving compensation : the discharge of a debt or an obligation," and "something that is paid : something given to discharge a debt or obligation or to fulfill a promise."  Webster's Third New International Dictionary 1659 (unabridged ed. 2002); see K.L.N. Construction Co. v. Town of Pelham, 167 N.H. 180, 185 (2014) ("When a term is not defined in the statute, we look to its common usage, using the dictionary for guidance."); see also RSA 21:2 (2020).  Construing all parts of the statute together, we believe that the unchanged language of the last sentence is broad enough to encompass the explicit expansion of remedies available to plaintiffs suing the State on a contract action set out in the amended first sentence.  See Laws 2020, 12:2; see also Conduent State & Local Solutions, 171 N.H. at 420.

When read in the context of the amended statute as a whole, we conclude that the phrase "manifest said claim for payment from the appropriation under which the contract was entered into," refers to the relevant department's or agency's responsibility to provide the remedy "to discharge a debt or obligation or to fulfill a promise," as determined by the judgment entered against the department or agency.  Laws 2020, 12:2; Webster's Third New International Dictionary, supra; see Laws 2020, 12:2.  This judgment may "includ[e] specific performance and other equitable remedies that are not limited to money damages."  Laws 2020, 12:2.  If the department or agency has

"insufficient appropriations to cover that judgment," the attorney general shall present the breach of contract judgment to the General Court to satisfy it. Chase Home for Children, 162 N.H. at 732; see Laws 2020, 12:2. This construction of the last sentence of the statute is consistent with the amended statute as a whole, effectuates the statute's overall purpose, and best conforms to the legislature's expressed intent reflected in the amendment. See Laws 2020, 12:2; Conduent State & Local Solutions, 171 N.H. at 420; XTL-NH, Inc., 170 N.H. at 656.

Here, should a judgment be entered against the State, the DOC will be responsible for providing the remedy from its appropriations to fulfill its promises under the Laaman Settlement Agreement pursuant to said judgment. See Laws 2020, 12:2. If the DOC has insufficient appropriations to cover the judgment, the attorney general "shall present said claim to the general court for the requisite appropriation." Id. "The clear intent of RSA 491:8 is to grant a right to sue the State for breach of contract." Chase Home for Children, 162 N.H. at 731 (construing the prior version of RSA 491:8). The clarity of this intent is only strengthened by the amended language, explicitly expanding the remedies available to plaintiffs suing the State in a contract action. See Laws 2020, 12:2. We conclude that the legislature has prescribed the terms and conditions on which it consents to be sued, and the manner in which the suit shall be conducted, such that it has waived sovereign immunity for Avery's action seeking specific performance. See id.; see also XTL-NH, Inc., 170 N.H. at 656.

The department argues that "[s]pecifically enforcing agreements like the Laaman Settlement Agreement improperly constrains future legislatures and commissioners from adapting to changing technology, rehabilitative practices, and best correctional practices." In light of its recent amendment to RSA 491:8, we disagree that the legislature would find that agreements settling lawsuits against the State are "likely to impose obligations on the government that would constrain future policy decisions or impair public welfare." Texas A & M University-Kingsville v. Lawson, 87 S.W.3d 518, 522 (Tex. 2002) (plurality opinion); see Laws 2020, 12:2. Settlement of a lawsuit "trades unknowns — such as what the evidence will be, and how [the trier of fact] will view it — for knowns — obligations that are more accurately assessable." Lawson, 87 S.W.3d at 522. The need to weigh the costs and benefits of agreeing to settle a lawsuit is common to all parties to a settlement, including the State. "In reaching a settlement, the government is guided by legal counsel to help gauge the degree of exposure to liability and the fairness of the settlement." Id.

When the State has decided to settle a lawsuit, or more broadly, to contract with another party, "the legislature has specifically authorized the courts to enter a . . . judgment against the State when it breaches a contract." Chase Home for Children, 162 N.H. at 733. To conclude that sovereign immunity bars Avery's action for breach of the Laaman Settlement Agreement

8

"would require us to ignore these legislative directives and to permit a State [department or] agency to disregard its contractual obligations." Id. Here, Avery has alleged that the DOC is failing to meet its contractual obligations under the Laaman Settlement Agreement by failing to redress, among other things, holes and rust in the ventilation systems, "[c]ontaminated waste water" leaking onto the floors of the Food Service Department, and the unavailability of required counseling services. Assuming these alleged facts are true, as we must at the motion-to-dismiss stage, Gagne, 172 N.H. at 658, we fail to see how specific enforcement of the Laaman Settlement Agreement would "constrain[]" the department from adapting to "best correctional practices."

"[T]he functionality of state institutions depends on the trust and confidence of New Hampshire citizens. Allowing the State to disregard its contractual obligations would undermine this trust." Chase Home for Children, 162 N.H. at 733. This principle remains true in the context of agreements settling lawsuits against the State, and a holding to the contrary would deter the settlement of such lawsuits for fear of losing the ability to enforce remedies the State has promised to deliver. This result cannot have been the legislature's intent. We, therefore, hold that RSA 491:8, as amended in July 2020, has waived the State's sovereign immunity for Avery's suit for breach of the Laaman Settlement Agreement. See Laws 2020, 12:2.

III

We now turn to the trial court's alternative ruling that Avery lacked constitutional standing to sue the department for breach of the Laaman Settlement Agreement because he "failed to articulate any personal injury suffered as a result of the NHSP's alleged violations." Generally, in ruling upon a motion to dismiss, the trial court must determine whether the allegations contained in the plaintiff's pleading sufficiently establish a basis upon which relief may be granted. Birch Broad. v. Capitol Broad. Corp., 161 N.H. 192, 199 (2010). When a motion to dismiss challenges the plaintiff's standing to sue, the trial court must look beyond the plaintiff's unsubstantiated allegations and determine, based upon the facts, whether the plaintiff has sufficiently demonstrated his right to claim relief. Conduent State & Local Solutions, 171 N.H. at 418. Because the relevant facts are not in dispute, we review the trial court's determination on standing de novo. Id.

Standing under the New Hampshire Constitution requires parties to have personal legal or equitable rights that are adverse to one another, with regard to an actual, not hypothetical, dispute, which is capable of judicial redress. Id. In evaluating whether a party has standing to sue, we focus on whether the party suffered a legal injury against which the law was designed to protect. Id. Neither an abstract interest in ensuring that the State Constitution is observed, nor an injury indistinguishable from a generalized wrong allegedly suffered by the public at large, is sufficient to constitute a personal, concrete interest. Id.

9

Rather, the party must show that its own rights have been or will be directly affected.  Id.

Avery argues that the trial court erred in finding that he did not have standing to enforce the Laaman Settlement Agreement because he "has a contractual relationship with [the DOC]," and he "has a legal and equitable right to have [the DOC] comply with the terms and provisions of the settlement agreement."  Avery essentially contends that he has alleged an injury sufficient to confer standing to sue because he is a party to the Laaman Settlement Agreement, he has alleged breaches of that agreement, and "'[a]n unexcused failure to perform a contract is a legal wrong.'"  (Quoting 24 Samuel Williston & Richard A. Lord, Williston on Contracts § 64:6 (4th ed. 2002)).

The department counters that Avery "does not allege injury to himself; instead, he speculates that the conditions he describes harm all NHSP inmates."[3]  Further, the department argues that Avery does not have standing "because he does not have the right to represent the interests of the class of Laaman inmates who were subject to the Laaman Decree and are third-party beneficiaries to the Laaman Settlement Agreement."  In a similar vein, the department asserts that Avery "is not permitted to bring this case as a class action."  While the trial court acknowledged that Avery had "sufficiently alleged that a contract, to which he is a party, has been breached," it agreed with the DOC that Avery did not have standing because he "failed to articulate how any breach has injured him personally."

We agree with Avery.  Settlement agreements are contractual in nature and, therefore, are generally governed by principles of contract law.  Poland, 156 N.H. at 414; accord Trapp v. Roden, 41 N.E.3d 1, 8-9 (Mass. 2015).  In describing the distinction between having standing to bring a tort action and a contract action, we have stated, "The fundamental difference between tort and contract actions lies in the nature of interests protected.  Tort actions protect the interest in freedom from various kinds of harm.  Contract actions protect the interest in having promises performed."  Porter v. City of Manchester, 151 N.H. 30, 38 (2004) (quotation omitted).

A party to a contract has a cognizable interest in having the contract's promises performed, and an alleged breach constitutes a legal injury to that interest sufficient to confer standing.  See Katz v. Pershing, LLC, 672 F.3d 64, 72 (1st Cir. 2012) ("The invasion of a common-law right (including a right conferred by contract) can constitute an injury sufficient to create standing."); Trapp, 41 N.E.3d at 9 ("When a party is a signatory to a contractual agreement, a breach of contract is an injury sufficient to confer standing.").  "It is

---

[3] The department argues that Avery also lacks standing because his claim is barred by sovereign immunity; thus, his claim is not capable of judicial redress.  Given our holding in part II above, this argument is unavailing.

axiomatic that an action upon a contract or for breach of a contract can be brought and maintained by one who is a party to the contract sued upon." Wilcox v. Webster Ins., Inc., 982 A.2d 1053, 1061 (Conn. 2009) (quotation omitted). "[W]hen a plaintiff generally alleges the existence of a contract, express or implied, and a concomitant breach of that contract, [the plaintiff's] pleading adequately shows an injury to [the plaintiff's] rights." Katz, 672 F.3d at 72-73 (explaining that, to make out a breach of contract claim under New York law, the plaintiff must plead the existence of a promise that the plaintiff is entitled to enforce).

There is no dispute that Avery is a party to the Laaman Settlement Agreement. See Wilcox, 982 A.2d at 1061. While Avery did not sign the agreement himself, the agreement was signed on his behalf. See Trapp, 41 N.E.3d at 9. We conclude that, as a party to the Laaman Settlement Agreement, Avery "has a cognizable legal interest in ensuring that the DOC uphold its end of the bargain" under this agreement. Id. at 8-9 (holding that a signatory to a settlement agreement had standing to sue the Department of Corrections for breach of the agreement even though the signatory "ha[d] never been, and was not at the time of trial, confined to [the relevant correctional facility]"); see also Porter, 151 N.H. at 38 ("Contract actions protect the interest in having promises performed." (quotation omitted)). His interest is not abstract and an injury to it is distinguishable from a generalized wrong allegedly suffered by the public at large. See Conduent State & Local Solutions, 171 N.H. at 418. Avery's complaint alleges several breaches of the Laaman Settlement Agreement. We need not inquire further to determine that Avery has alleged a sufficient injury to his own legal interests to satisfy the standing requirement. See Katz, 672 F.3d at 72; cf., e.g., Birch Broad., 161 N.H. at 199-200 (inquiring further where a plaintiff had assigned its rights under the contract that was allegedly breached); Sunapee Difference v. State of N.H., 164 N.H. 778, 783, 788 (2013) (inquiring further in order to hold lessee-assignor "contractually retained a [concrete and] sufficient interest in the outcome of the reformation claim to grant it standing to sue").

On appeal, the DOC has pointed to no authority to explain why a party to a contract alleging a breach of said contract lacks standing to pursue the claim. Instead, the department supports its argument that Avery lacks standing with case law holding, for example, that the "plaintiffs lack[ed] standing because they cannot raise the constitutional claims of another," Hughes v. N.H. Div. of Aeronautics, 152 N.H. 30, 35 (2005), and that "it [wa]s plain error to permit this imprisoned litigant who [wa]s unassisted by counsel to represent his fellow inmates in a [section 1983] class action," Oxendine v. Williams, 509 F.2d 1405, 1407 (4th Cir. 1975) (per curiam) (concluding that, under Federal Rule of Civil Procedure 23, plaintiff could not "fairly and adequately protect the interests of the class," which depends in part on "the quality of counsel," because he did not have the assistance of counsel). These cases are inapposite.

Although the Laaman Settlement Agreement settled a section 1983 claim, which alleged violations of Avery's and a class of prisoners' constitutional rights, Avery, in his action to enforce the Laaman Settlement Agreement, is not raising a constitutional claim on behalf of himself or others; he is raising a breach of contract claim.  See Porter, 151 N.H. at 38; see also Trapp, 41 N.E.3d at 8-9.  As a party to a contract that he alleges has been breached, Avery has sufficiently demonstrated that he has suffered a legal injury against which the law was designed to protect.  See Conduent State & Local Solutions, 171 N.H. at 418.  Avery has shown that his own rights, as a party entitled to enforce the promises made by the DOC in the Laaman Settlement Agreement, have been directly affected by the DOC's alleged breaches.  See id.  We, therefore, hold that Avery has standing to bring his breach of contract action against the department.

IV

In sum, we conclude that the State has waived sovereign immunity for Avery's suit for breach of the Laaman Settlement Agreement and that he has standing to pursue his action.  Thus, the trial court erred in dismissing Avery's complaint on those grounds.  We reverse and remand for further proceedings consistent with this opinion.

Reversed and remanded.

HICKS, BASSETT, and DONOVAN, JJ., concurred.

12